■ LAUREN RISOLI, Respondent, v LONG ISLAND LIGHTING COMPANY, Appellant and Third-Party Plaintiff-Appellant, et al., Defendants and Third-Party Plaintiffs, et al., Third-Party

Defendants.—Order, Supreme Court, New York County (Alfred M. Ascione, J.), entered on or about July 9, 1987, which, *inter alia,* denied the motion of defendant Long Island Lighting Company for change of venue to Nassau County, modified, on the law, the facts, and in the exercise of discretion, to the extent of granting said motion for change of venue, and otherwise affirmed, without costs and disbursements.

This is an action to recover damages for personal injuries sustained by plaintiff, who suffered burns to her head and arms as the result of an explosion which occurred when she attempted to light a cigarette with a Bic lighter set on a high flame. The accident took place on March 13, 1984, in the employee's restroom of the Ground Round Restaurant, located on the Nassau-Suffolk County border, where plaintiff was employed as a waitress. By service of summons and complaint on March 1, 1985, plaintiff commenced suit against defendant-appellant Long Island Lighting Company (LILCO) and defendants owners of the building housing the restaurant, alleging that the explosion was caused by the seepage of natural gas from service lines LILCO maintained on the premises.

At the time of the accident, plaintff resided in Nassau County with her boyfriend. In January 1985, 8 months after the accident and 2 months before bringing suit, she moved to New York County, where she lived in the apartment of a cousin, while obtaining medical care and psychiatric treatment. The action was commenced on March 1, 1985, with plaintiff's New York County residence cited as the basis for venue. In March 1986, plaintiff moved her residence back to her boyfriend's Nassau County apartment.

On or about July 5, 1985, LILCO moved for a change of venue to Nassau County. Following reference to a Special Referee to hear and report as to the bona fides of plaintiff's New York County residency, and the Referee's findings that such residency had been established, the court below denied LILCO's motion and granted plaintiff's cross motion to confirm the Referee's report. We now modify to the extent of granting the motion to change venue to the County of Nassau.

While cognizant of the general rule that a determination on a motion for a change of venue lies within the discretion of the court *(Wecht v Glen Distribs. Co.,* 112 AD2d 891, 892), the case before us presents a confluence of factors so favoring venue in Nassau County that we conclude the court abused its discretion and erred in denying the motion. *(See, McGuire v General Elec. Co.,* 117 AD2d 523.)

Initially, we note that this court has long followed the rule that, other things being equal, a transitory action should be tried in the county where the cause of action arose. *(McGuire v General Elec. Co., supra,* at 523-524; *Slavin v Whispell,* 5 AD2d 296.) We have held that, the phrase "other things being equal" refers to the number of witnesses residing in the competing counties and that where "the county with the preponderance of witnesses is the county in which the cause of action arose, venue should be therein placed". *(Seabrook v Good Samaritan Hosp.,* 58 AD2d 538.)

A further consideration which has evolved with respect to proper venue is the nature of the witnesses' testimony. In this regard, our prior determinations instruct that the convenience of nonparty witnesses whose testimony will ultimately bear on the issue of damages is subordinate to the convenience of nonparty witnesses who will give testimony on questions of liability. *(See, e.g., Katz v Goodyear Tire & Rubber Co.,* 116 AD2d 506, 507-508; *Brunner v Joubert,* 118 AD2d 424, 425.)

Applying these principles to the case at bar, we note that plaintiff's injuries occurred in a Farmingdale, Long Island, restaurant situated on the Nassau-Suffolk County border, and that the great preponderance of nonparty witnesses reside or work in Nassau or Suffolk County. Of these, LILCO has listed no fewer than 20 potential witnesses on the issue of liability, including 8 civilian witnesses, 8 volunteer firefighters, and 4 members of the Suffolk County Police Department.

In stark contrast, plaintiff's potential New York County witnesses number three—all as to damages. While the convenience of these three witnesses, who are medical experts, is a factor to be weighed, it is, as previously noted, subordinate to the convenience of the liability witnesses. *(Chung v Kivell,* 57 AD2d 790.) Moreover, these witnesses would have to be viewed as being on at least equal footing with the potential medical witnesses who treated plaintiff at the Nassau County Medical Center, where she was rushed on the night of the accident and where she remained hospitalized for a period of one month.

Although the convenience of the parties and their employees is irrelevant in venue determinations *(Wecht v Glen Distribs. Co., supra,* at 892), it cannot escape note that even plaintiff's own convenience would be furthered by venue in Nassau County, since she has moved back there. Of actual, and indeed critical, relevance, is the simple fact that it is solely with regard to plaintiff's three New York County doctors that a claim of inconvenience may be asserted. For the

reasons above stated, such a claim fails to constitute a cogent reason upon which to ground a departure from the long-standing rule that the venue of a transitory action should be where the action arose. *(See, Chung v Kivell, supra.)*

In a writing that makes lengthy reference to liability evidence which may or may not be admitted at trial, evaluates this evidence, and concludes that "the only disputed issue as to which identifiable witnesses have relevant testimony concerns damages", our dissenting colleague would disregard the well-established guidelines this court has long followed in deciding issues of venue.

We respectfully decline to adopt this novel approach, the effect of which is tantamount to a grant of summary judgment on the issue of liability. It cannot be too heavily emphasized that the review of factors to be considered in a motion to change venue must not include an assessment of potential trial evidence or an evaluation of the merits of the parties' claims, and surely does not permit determination as to liability. It is only because we wish to avoid the very pitfalls we here point out that we refrain from reciting the various countervailing claims that can be asserted on behalf of the defendants. We leave such arguments to be made by the parties, at the appropriate time, and in the proper forum.

Accordingly, we have considered the number of potential witnesses living or working in the competing counties, whether their testimony will bear on the issue of liability or of damages, and the total absence of a nexus between the accident and the County of New York, and conclude that these factors preponderate to support transfer to Nassau County, and that "the ends of justice will be promoted by the change." (CPLR 510 [3].) Concur—Ross, Kassal and Rosenberger, JJ.

Sandler, J. P., dissents in a memorandum as follows: I am unable to discern in this record a persuasive reason for disturbing the IAS court's exercise of discretion. With respect, the conclusion reached in the court's memorandum opinion seems to me to result from a mechanical application of undoubted, well-established principles which have limited, if any, pertinence to the realistic situation disclosed by the record. It is, of course, true that, "things being equal, a transitory action should be tried in the county where the cause of action arose." It is also true as a general matter that "the convenience of * * * witnesses whose testimony will ultimately bear on damages is subordinate to the convenience of * * * witnesses who will give testimony on * * * liability."

But it is surely axiomatic that the applicability of these well-established principles on a motion to change venue under CPLR 510 (3) depends upon a showing that there are in fact witnesses whose convenience will be promoted by a change of venue who have relevant testimony to present with regard to a disputed issue. *(See, Wecht v Glen Distribs. Co.,* 112 AD2d 891, 892; *Stavredes v United Skates,* 87 AD2d 502.)* A study of the record is persuasive that the defendant has failed to disclose the existence of even one such witness with regard to the issue of liability.

Preliminarily, although a number of potential witnesses are listed in defendant's moving papers, uncritically accepted in the court's memorandum opinion, the papers present not even a hint of a suggestion as to what any of those witnesses would testify to on the question of liability, or how their testimony would conceivably be of assistance to the defendant on that issue. From an examination of the manner in which the witnesses were referred to, the inference is compelling that neither defendant's counsel, nor anyone acting in behalf of the defendant, has spoken to any of these witnesses, has any idea as to what they would testify to, or has any basis for believing that testimony of any of them would be helpful to defendant on the issue of liability. Indeed, the record is convincing that not one of these witnesses could reasonably be thought to have any evidence to present that would be of any value to defendant on the issue of liability.

Of central importance to the issue presented is a detailed report dated July 5, 1984 of the Gas Division of the New York State Department of Public Service which followed an intensive investigation into the incident with which we are concerned. The report establishes as a fact that cannot reasonably be disputed, and that in fact is not disputed, the presence in and around the bathroom in which the fire occurred of natural gas on the morning following the fire. The presence of the natural gas was established by a customer service specialist of the defendant on a recheck requested by the Gas Division inspector after an initial earlier check by the defendant's servicemen had concluded that natural gas was not present. The explanation of the defendant's inspector for the original inaccurate finding is unsatisfactory and more than a little disquieting.

Pertinently, in violation of its obligations, LILCO had not informed the Gas Division of the event. The Gas Division was informed of the incident by the Suffolk County Arson Squad, resulting in the dispatch of a staff inspector and the request to

LILCO for a recheck. It is apparent that the condition, although a dangerous one, would not have been disclosed had it not been for the notification of the Gas Division by the Suffolk County Arson Squad. It is also of interest that the request to the defendant to reinvestigate the incident was not recorded on any company documents, and, in violation of a relevant regulation, the defendant's daily log for March 14, 1984 had no recording of what transpired after the initial investigation.

After what has every appearance of having been a careful and exhaustive investigation, the Gas Division came to a number of significant conclusions. The staff concluded that the incident was:

"[M]ost probably caused by natural gas which leaked from a puncture in the 1-inch plastic service line to the Ground Round Restaurant * * * The gas migrated through the concrete block foundation and through an electrical conduit into a restroom and was ignited when an employee lit a cigarette resulting in a flash fire which caused her serious injuries.

"Laboratory examination of the plastic pipe found that the hole was caused by a single impact puncture from which we must conclude that the pipe was damaged during the handling or installation process."

The report went on to observe:

"The service line to the Ground Round Restaurant was excluded when the other gas facilities in the area were surveyed as part of the 5 year distribution system leak survey, on October 11, 1983. This is a violation of Part 255.60 (b) (2) for LILCO's failure to comply with its own written procedure (U.P.G. 83-F-1.10). Had the service been surveyed, the leak might have been detected and the incident avoided.

"LILCO failed to include the Ground Round Restaurant on its list of buildings of public assembly which have an internal leakage inspection conducted annually as required by Part 255.66 (e) (2). This would have given company personnel an opportunity to find indications of natural gas entering the building and discover the leak in the service line prior to the incident.

"The company was also in violation of Part 255.71 for failure to notify the Gas Division of the incident and Part 255.75 for not recording any information regarding the gas leak on any official document or on the daily log for March 14, 1984."

The report went on to recommend that the commission order LILCO to undertake a number of fundamental programs

to improve its safety performance. These recommendations were made "[o]n the basis of the safety code violations related to this incident, and the poor performance of LILCO personnel in conducting an initial investigation".

In view of the undisputed fact of the presence of natural gas in and around the restroom, a fact established by LILCO's own employee on the recheck and not disputed by LILCO, the question remains as to what, if anything, LILCO intends to adduce on the issue of liability from the "20 potential witnesses on the issue of liability, who live or work in Nassau or Suffolk Counties, including approximately eight civilian witnesses, eight volunteer firefighters, and four members of the Suffolk County Police Department."

We are not informed in defendant's moving papers what any of these witnesses would testify to on the issue of liability that would be relevant to that issue and helpful to the defendant on it. It is understandable that defendant's moving papers do not even suggest the nature of the helpful testimony that they expect to elicit from these witnesses whose names are so casually presented. Surely, they are not reasonably expected to give testimony presenting a triable issue as to the presence of natural gas and the existence of a gas leak. If there is some other issue relevant to liability as to which any of these witnesses is expected to give relevant testimony, we are not informed of the nature of that relevant testimony, and it is difficult to envisage even as a possibility that such testimony is expected in good faith.

It is, of course, true that the defendant will have every right to contend on the trial of this case that notwithstanding the presence of natural gas the fire occurred for reasons unrelated to the gas leak. But the record discloses no basis for believing that such an issue would be developed by the testimony of a witness whose convenience would be promoted by a transfer of the venue of this action to Nassau County.

The inescapable fact that emerges from a study of this record is that the only disputed issue as to which identifiable witnesses have relevant testimony concerns damages. As to that issue, the IAS court was clearly justified in the conclusion that the convenience of witnesses with the most critically relevant testimony on that issue would best be served by retaining the action in New York. On this record, I fail to see a plausible, much less satisfactory, reason for interfering with the IAS court's sensible and appropriate exercise of discretion.

Accordingly, the order of the Supreme Court, New York

County (Alfred M. Ascione, J.), entered on or about July 12, 1987, which, *inter alia,* denied the motion of defendant LILCO for a change of venue to Nassau County, should be affirmed.